AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.
JESUS FERNANDEZ,

Defendant(s)

Case No. 17-6097-SNOW

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 7 to October 23, 2014 in the county of Broward in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) and 846 | Knowingly and intentionally conspire with others to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841 (a)(1), and 846. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

S/A Daniel P. Evans, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/13/17

[signature: Lurana S. Snow]
*Judge's signature*

City and state: Fort Lauderdale, Florida

Lurana S. Snow, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Daniel Evans, being duly sworn, hereby depose and state the following:

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (hereinafter "HSI"), and have been so employed since June 2001. I am responsible for conducting narcotics smuggling investigations involving the use of marine vessels. As a special agent with HSI, I have participated in numerous narcotics investigations, both international and domestic, involving physical and electronic surveillance and the control and administration of confidential sources. I have participated in the arrest and subsequent prosecution of numerous targets. I also have spoken on numerous occasions with informants, suspects, and experienced narcotics investigators concerning the manner, means, methods and practices that drug traffickers use to further their drug trafficking operations and the most effective methods of investigating and dismantling drug trafficking organizations.

2. As a law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, I am empowered by law to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 18, 19, 21, 31 and 46 of the United States Code.

3. The information contained in this Affidavit is submitted for the sole purpose of establishing probable cause to establish that Jesus FERNANDEZ conspired to possess with intent to distribute 5 kilograms or more of cocaine in violation of Title 21, United State Code, Sections 846, 841(a) and 841(b)(1)(A).

4. As this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all of the information known to me and other law

enforcement officers involved in this investigation. The facts and information contained in this Affidavit are based on my personal knowledge and observations, as well as upon information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation as well as my review of records, documents, and other physical items obtained during the course of this investigation.

5. On or about October 7, 2014, a narcotics trafficker (hereinafter "BROKER") contacted an HSI Confidential Informant (hereinafter "CI") via Blackberry Messenger (hereinafter "BBM") using BBM profile name "M4"). The BROKER indicated that he had an associate in Venezuela interested in arranging an multi kilogram shipment of cocaine to Fort Lauderdale, Florida via Port Everglades (hereinafter "PEV") to unknown buyers.[1] The CI asked the BROKER to provide the name of the vessel and the container number so that those arrangements could be made. The BROKER then advised the CI that he would contact him the next day and provide the CI with a contact number for a local member of the drug trafficking organization (DTO) in South Florida, later identified as JESUS FERNANDEZ (hereinafter "FERNANDEZ") to discuss further details of the drug transaction.

6. On or about October 8, 2014, the BROKER provided the CI with phone number 305-608-1516 as the number for "Benjamin" (a/k/a "FERNANDEZ") to arrange the meeting with "Benjamin" (FERNANDEZ) in South Florida. On the same date, the CI called "Benjamin" (FERNANDEZ) and arranged a meeting at La Carreta Restaurant located at 14791 Miramar Parkway, Miramar, Florida.

---

[1] The CI had been communicating with the BROKER via BBM since in or about September 2014 and led the BROKER to believe that he (CI) was able to arrange the smuggling of cocaine through PEV.

7. Later the same day, law enforcement set up surveillance at La Carreta restaurant. At approximately 6:05 p.m., FERNANDEZ contacted the CI and stated he was already at La Carreta and was inside waiting at the bar. At approximately 6:23 p.m., the CI arrived at La Carreta and met with FERNANDEZ as law enforcement conducted surveillance. During their conversation, FERNANDEZ told the CI that from that point forward, FERNANDEZ did not want to be introduced and/or meet with anyone else. FERNANDEZ went on to say that moving forward, the CI would deal only with FERNANDEZ. FERNANDEZ then stated to the CI that a couple of days before the shipment arrived, he (FERNANDEZ) and the CI would meet again to discuss how the exchange would take place (Referring to the delivery of the kilograms of cocaine to FERNANDEZ after they were retrieved by the CI from PEV). The undercover meeting between the CI and FERNANDEZ was recorded.

8. Shortly thereafter, law enforcement observed FERNADNEZ leave the restaurant and drive away in a white Toyota Corolla bearing tag number BVAB82. Surveillance later observed FERNANDEZ arrive at 12240 NW 119th Avenue, Miami, Florida. DMV records checks show that FERNANDEZ had a registered mailing address of 12240 NW 19th Avenue in Miami, Florida. Law enforcement compared DMV records for individuals at the address of 12240 NW 19th Avenue in Miami, Florida, and determined that the individual they observed meet with the CI at La Carreta was the same individual that appeared in the DMV records and was identified as JESUS ENRIQUE FERNANDEZ with a DOB of May 11, 1971.

9. On or about October 9, 2014, the CI received a BBM message from a PIN with profile name "LXXXXCCCCC" (hereinafter "LX") previously unknown to the CI. LX

communicated to the CI that he was a friend of the BROKER and that he was aware that FERNANADEZ had met with the CI earlier. LX then informed the CI that he (LX) had coordinated the shipment of thirty (30) kilograms of cocaine. LX also advised the CI that he (LX) was currently in Venezuela and any details on the shipment would go through him. The CI then reminded LX that he had already made the BROKER aware that the transportation port fees for getting the 30 kilograms of cocaine out of PEV would be $2,000 per kilogram of cocaine.

10. On or about October 10, 2014, both LX and the BROKER communicated with the CI via BBM and advised the CI that the thirty (30) kilograms of cocaine were successfully loaded on to a container destined to the PEV. LX added that the details of the shipment would be passed on to the CI in the near future.

11. On or about October 12, 2014, LX sent the CI a photograph via BBM depicting three (3) black "computer-like" bags inside what appeared to be an empty container. (Law enforcement believes this was done to show proof that the thirty (30) kilograms of cocaine had been loaded in the container).

12. On or about October 20, 2014, LX and the CI via BBM exchange agreed to meet at the Tamarindo restaurant located at 233 W. State Road 84 in Fort Lauderdale, Florida to discuss the details of the shipment of cocaine. At approximately 12:48 p.m., the CI arrived at Tamarindo. At approximately 1:22 p.m., law enforcement observed FERNANDEZ and LX arrive Tamarindo restaurant in a white Toyota Corolla bearing tag number BVAB82 driven by FERNANDEZ. This was the same vehicle driven by FERNANDEZ in the meeting that had taken place on October 8, 2014.

13. Law enforcement observed LX enter the restaurant and sit next to the CI while FERNANDEZ remained outside in his vehicle. Law enforcement observed FERNANDEZ move his vehicle to various locations within the parking lot and constantly look around at the surroundings. Law enforcement observed FERNANDEZ leave his vehicle, enter the restaurant without acknowledging the CI or LX and sit a distance away from them while still looking constantly at his surroundings inside and outside of the restaurant. After approximately ten (10) minutes, FERNANDEZ left the restaurant and returned to the vehicle. FERNANDEZ remained in the vehicle until the meeting concluded and LX returned to the vehicle. This behavior is consistent with drug traffickers in an attempt to identify the presence of law enforcement in the area.

14. During the meeting, LX told the CI he had arrived in town the previous night (10/19/2014). LX told the CI that the shipment was on its way and that there was a delay in the vessel departure, but that he was going to pass the CI the shipment details that day because the shipment was three (3) days away. LX then asked the CI if he could be given one (1) of the three (3) bags while the other two (2) remained as collateral until he returned. The CI stated to LX that he was going to talk to his associates from the port, but that it would be unlikely they agreed to those terms. LX then advised the CI he was going to go purchase a chip (simcard) with FERNANDEZ. LX then exited the restaurant and entered the white Toyota Corolla where FERNANDEZ was waiting.

15. On same day, LX sent the CI two (2) photographs via BBM. One photograph depicted a container red in color with "SUDU 695823 2 45G1" (hereinafter "TARGET CONTAINER") on it. The second picture depicted a red container seal with marking "H188707" on the lock and "H188390" on the stem. LX stated that this was the

information of the container that would have the three (3) black bags holding 30 kilograms of cocaine sent from Venezuela. LX also stated to the CI the name of the vessel was "Melbrou straded" (MV Melbourne Strait).

16. Information was received from Customs and Border Protection (CBP) out of PEV that due to a delay in the departure by the MV Melbourne Strait out of Venezuela, the vessel was redirected to make entry in the United States at the Port of Jacksonville, Florida on October 23, 2014. In addition, the TARGET CONTAINER was now being discharged in the Port of Jacksonville instead of PEV.

17. On or about October 23, 2014, HSI agents and Broward Sherriff's Office (BSO) Task Force Officers (TFO) traveled to the Port of Jacksonville, Florida to meet the MV Melbourne Strait and coordinate the inspection of the TARGET CONTAINER.

18. Once the vessel arrived at the port, CBP officers boarded the MV Melbourne Strait and identified the TARGET CONTAINER on the vessel. CBP officers were able to retrieve three (3) black bags located inside the TARGET CONTAINER. The inspection of the bags yielded the discovery of ten (10) brick-like packages in each of the three (3) bags for a total of thirty (30) bricks. Each brick had black wrappings and the photograph of a horse at the center. A small test sample was extracted from the subject contraband which tested positive for cocaine. The subject contraband was weighed at approximately 30 kilograms.

19. Based upon the foregoing information, your affiant respectfully submits that there is probable cause to believe that JESUS FERNANDEZ did knowingly and intentionally conspire to possess with intent to distribute five (5) kilograms or more of

cocaine, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21 United States Code, Section 846.

FURTHER AFFIANT SAYETH NAUGHT.

DANIEL P. EVANS, SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Subscribed and sworn to me
before this 13th day of March, 2017.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.
JESUS FERNANDEZ,
*Defendant*

Case No. 17-6097-SNOW

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* JESUS FERNANDEZ, who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☑ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

Knowingly and intentionally conspire with others to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and 846.

Date: 3/13/17

Lurana S. Snow
*Issuing officer's signature*

City and state: Fort Lauderdale, Florida

Lurana S. Snow, United States Magistrate Judge
*Printed name and title*

**Return**

This warrant was received on *(date)* ________, and the person was arrested on *(date)* ________ at *(city and state)* ________.

Date: ________

*Arresting officer's signature*

*Printed name and title*